**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

KATHLEEN DOLAN,

        Plaintiff,

                                      Case No. 08-14199

v.                                     Hon. Gerald E. Rosen

CITY OF ANN ARBOR and
FIFTEENTH DISTRICT COURT,

        Defendants.

_____/

**OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS**
**FOR JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on_____October 30, 2009_____

PRESENT:  Honorable Gerald E. Rosen
                     Chief Judge, United States District Court

## I.  INTRODUCTION

Plaintiff Kathleen Dolan commenced this case in this Court on September 30,

2008, alleging that her former employer, the Defendant Fifteenth District Court,

terminated her employment in violation of the Family and Medical Leave Act ("FMLA"),

29 U.S.C. § 2601 *et seq.*  Plaintiff also has named the City of Ann Arbor as a Defendant,

on the ground that her employment with the Fifteenth District Court "was administered by

Defendant City of Ann Arbor."  (Amended Complaint at ¶ 11.)  This Court's subject

matter jurisdiction rests upon Plaintiff's assertion of a claim arising under federal law.

*See* 28 U.S.C. § 1331.

Presently before the Court are (i) a motion for judgment on the pleadings filed by Defendant Fifteenth District Court, and (ii) a motion for summary judgment filed by Defendant City of Ann Arbor.  In these two motions, Defendants argue principally that the Michigan district courts have sovereign immunity from suit in federal district court, and that Congress has not abrogated this sovereign immunity as to the sort of FMLA claim asserted by Plaintiff in this case.[1]  In response, Plaintiff contends that the multi-factor test applied by the courts to determine whether a defendant entity is an "arm of the State," and hence entitled to sovereign immunity, establishes that the Defendant Fifteenth District Court is not immune from the present suit.

Each of these two motions has been fully briefed by the parties.  Having reviewed the parties' written submissions in support of and opposition to Defendants' motions, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of these motions.  Accordingly, the Court will decide Defendants' motions "on the briefs."  *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  As explained below, the Court finds that the Fifteenth District Court enjoys sovereign immunity from this suit, and that Plaintiff's FMLA claim

---

[1]In its motion, the Defendant City of Ann Arbor also argues that it has been improperly joined in this action because the Fifteenth District Court, and not the City, was Plaintiff's employer.

2

therefore cannot go forward in federal district court.

## II. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Beginning in December of 1997, Plaintiff Kathleen Dolan was employed by the Defendant Fifteenth District Court as a deputy court clerk. On November 26, 2006, Plaintiff experienced chest pains while at work, and she advised a supervisor that she needed to leave work to have her condition examined. After being seen by a doctor, Plaintiff requested time off from work, and she was granted leave from November 29, 2006 until December 10, 2006.

Plaintiff's time off from work was characterized as a medical leave, and the Fifteenth District Court requested that she provide medical certification of the need for this leave. On December 4, 2006, Plaintiff was advised that she needed to provide this medical certification as soon as possible. As she traveled to her doctor's office that day to obtain the requisite certification, however, she experienced severe chest pains and drove herself directly to the hospital, where she was admitted and remained overnight. That same day, the Defendant court terminated her employment. Plaintiff then commenced this suit on September 30, 2008, alleging that the Fifteenth District Court violated the FMLA by terminating her employment, and naming both the court and the City of Ann Arbor as Defendants.

## III.  ANALYSIS

**A.      The Standards Governing Defendants' Motions**

Through its present motion, Defendant Fifteenth District Court seeks the dismissal of Plaintiff's FMLA claim under Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings should be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget,* 510 F.3d 577, 582 (6th Cir. 2007) (internal quotation marks and citation omitted). When considering a motion under this Rule, the Court must "construe the complaint in the light most favorable to the plaintiff [and] accept all of the complaint's factual allegations as true." *Grindstaff v. Green,* 133 F.3d 416, 421 (6th Cir. 1998).  However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir. 1999).  To survive dismissal, the factual allegations of Plaintiff's complaint "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 1965, 1974 (2007).

Apart from the motion brought by the Fifteenth District Court, the Defendant City of Ann Arbor has moved for summary judgment in its favor or for dismissal of Plaintiff's complaint.  To the extent that this motion, like the one filed by the Fifteenth District Court, seeks dismissal of the complaint on grounds of sovereign immunity, it rests solely upon issues of law that may be decided on the pleadings alone.  Accordingly, the two Defendants' motions will be decided under the same standards.

4

**B.      The Doctrine of Sovereign Immunity Precludes Plaintiff from Proceeding with Her FMLA Claim Against the Defendant Fifteenth District Court.**

In seeking the dismissal of Plaintiff's complaint, Defendants contend that Plaintiff's employer, the Fifteenth District Court, is entitled to Eleventh Amendment immunity from suit in federal court.  As all parties recognize, the success of this appeal to sovereign immunity turns upon whether the Fifteenth District Court is properly considered an "arm of the State."  *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S. Ct. 568, 572 (1977).  Although this is a close question that is complicated, rather than illuminated, by the pertinent case law, the Court concludes that Plaintiff's complaint is subject to dismissal on grounds of sovereign immunity.

In a recent *en banc* ruling, the Sixth Circuit cited four factors that a court should consider in determining whether an entity is an "arm of the State," and hence entitled to sovereign immunity:  "(1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding."  *Ernst v. Rising,* 427 F.3d 351, 359 (6th Cir. 2005) (internal quotation marks and citations omitted).[2]  While all of these factors are entitled to some weight in determining whether

_____

[2]Somewhat confusingly, *Ernst* recounts not only the above-quoted four-factor test derived from earlier Sixth Circuit decisions, but also a somewhat different four-factor test culled from the Supreme Court's ruling in *Hess v. Port Authority Trans-Hudson Corp.,* 513 U.S. 30, 44-45, 51, 115 S. Ct. 394, 402-03, 406 (1994).  These two tests are essentially the same as to their first three factors, but differ as to their fourth factors.  In particular, *Ernst* reads the fourth factor in *Hess* as "whether the entity's functions fall within the traditional purview of state or local government."  *Ernst,* 427 F.3d at 359 (citing *Hess,* 513 U.S. at 45, 115 S. Ct. at 403).  Accordingly, the Court will incorporate this additional consideration into its sovereign immunity

5

an entity qualifies as an "arm of the State," the courts have recognized that the first factor — "whether any judgment must be satisfied out of the state treasury" — is "the most important consideration in resolving an Eleventh Amendment immunity issue." *Hess,* 513 U.S. at 51, 115 S. Ct. at 406; *see also Ernst,* 427 F.3d at 359 (characterizing this as "the foremost factor").

Before addressing each of these factors in turn, it is worthwhile to survey the several prior decisions in which courts have considered whether Michigan trial courts are "arms of the State" that may claim the protection of Eleventh Amendment immunity.  As will become clear, there is no shortage of rulings on this subject.  Unfortunately, the guidance provided by these rulings is modest at best.

First, Judge Borman of this District has held on three occasions that Michigan trial courts were entitled to Eleventh Amendment immunity.  *See Smith v. Oakland County Circuit Court,* 344 F. Supp.2d 1030, 1053-55 (E.D. Mich. 2004); *Englar v. 41B District Court,* No. 04-73977, 2006 WL 2726986, at *4-*5 (E.D. Mich. Sept. 22, 2006); *Geller v. Washtenaw County,* No. 04-72947, 2005 WL 3556247, at *6-*8 (E.D. Mich. Dec. 29, 2005).  In two of these decisions, the court found that the evidence was lacking or mixed as to whether the State of Michigan would be responsible for paying a judgment against the defendant court.  *See Smith,* 344 F. Supp.2d at 1055; *Geller,* 2005 WL 3556247, at *7.  Under these circumstances, the court deemed it appropriate to give greater weight to the

---

analysis.

6

other factors in the "arm of the State" inquiry, and to consider, in particular, whether a federal court suit against a Michigan trial court would pose a threat to the "dignity" of the State of Michigan. *See Smith,* 344 F. Supp.2d at 1055; *Geller,* 2005 WL 3556247, at *7-*8. The court found that these other factors tilted the balance in favor of sovereign immunity, reasoning that the state trial courts were "the 'adjudicative voice' of the State of Michigan, created pursuant to the Michigan Constitution and subject to the supervision of the Michigan Supreme Court." *Smith,* 344 F. Supp.2d at 1055; *see also Geller,* 2005 WL 3556247, at *8 (observing that the defendant trial court was "subject to the Michigan Supreme Court's authority," and that "the authority to hire and fire [court] personnel is designated by state statute to the courts rather than county administrators").[3]

More recently, however, Judge Lawson of this District held that a Michigan district court was not entitled to Eleventh Amendment immunity. *See Pucci v. Nineteenth District Court,* 565 F. Supp.2d 792, 803-05 (E.D. Mich. 2008). In so ruling, Judge Lawson opined that Judge Borman's decisions were not persuasive because they did not focus on the factor identified by the Sixth Circuit as the "most important" to an "arm of the State" analysis — namely, "the state treasury's exposure to a judgment in the event of liability." *Pucci,* 565 F. Supp.2d at 805. Upon considering this factor in light of various Michigan statutes and state court rulings, the court found it "apparent" that any judgment

---

[3]In the third case in which Judge Borman determined that a Michigan trial court was entitled to Eleventh Amendment immunity, the court relied almost exclusively on its prior decisions in *Smith* and *Geller,* and did not engage in an extended analysis or discussion of the four-factor test for "arm of the State" status. *See Englar,* 2006 WL 2726986, at *5.

7

against the defendant district court would be paid by the relevant local unit of

government, the City of Dearborn, and not from the state treasury.  565 F. Supp.2d at 805.

Because "[t]he Supreme Court and Sixth Circuit have suggested that this fiscal money

judgment issue, if not dispositive, is the most important factor," the court concluded that

the plaintiff's claims against the defendant district court were not barred by Eleventh

Amendment immunity.  565 F. Supp.2d at 805.[4]

Yet, in an unpublished decision issued just before Defendants filed their motions

in this case, the Sixth Circuit cast considerable doubt upon the "arm of the State" analysis

employed in each of these district court rulings.  In *Barachkov v. 41B District Court,* No.

06-2512, 311 F. App'x 863 (6th Cir. Feb. 20, 2009), the court reversed Judge Borman's

decision in *Englar* and remanded the case for further analysis and findings as to each of

the four factors in the "arm of the State" inquiry.  In so ruling, the Sixth Circuit explained

that "neither party has produced persuasive evidence regarding who — the State of

Michigan or [the relevant local government unit,] Clinton Township — will ultimately be

responsible for paying any judgment rendered against the [defendant] 41B District

Court."  *Barachkov,* 311 F. App'x at 869.  The court further observed that "the district

court made no findings as to the four factors" that the Sixth Circuit had previously

identified as relevant to an "arm of the State" inquiry, and it found that a remand was

---

[4]The defendants in *Pucci* have taken an appeal from Judge Lawson's ruling.  The Sixth
Circuit recently heard oral argument, but has not yet ruled on this appeal.

8

necessary to examine each of these factors.  311 F. App'x at 869.[5]

In reaching this result, the Sixth Circuit not only reversed Judge Borman's ruling in *Englar,* but also appeared to raise questions about Judge Lawson's ruling in *Pucci.* First, the court found it "important to note . . . that the *Pucci* court did not undertake an analysis of all four factors" in the "arm of the State" inquiry, but instead based its ruling "solely on the first factor" of this analysis.  *Barachkov,* 311 F. App'x at 869 n.1.  Earlier in its decision, the Sixth Circuit suggested that such exclusive reliance on the first factor would "understate[] the importance of the remaining factors in the arm-of-the-state analysis."  311 F. App'x at 867.  Next, in addressing the plaintiffs' claim that the local government unit, Clinton Township, and not the State of Michigan, would be liable for any judgment against the defendant district court, the Sixth Circuit discounted the plaintiffs' reliance on two sources — a Michigan statute, Mich. Comp. Laws § 600.8103(3), and a Michigan Supreme Court decision, *Cameron v. Monroe County Probate Court,* 457 Mich. 423, 579 N.W.2d 859 (1998) — upon which Judge Lawson had also relied in *Pucci.  See Barachkov,* 311 F. App'x at 867-68; *see also Pucci,* 565 F. Supp.2d at 805 (citing this Michigan statute and state supreme court ruling as among the grounds for concluding that the State of Michigan would not be called upon to pay any

---

[5]In a separate opinion concurring in part and dissenting in part, Judge Batchelder opined that a remand was unnecessary despite the defendant district court's failure to "definitively demonstrate[] that the state would be liable to pay any money judgment that the plaintiffs might recover," where the remaining factors in the "arm of the State" inquiry pointed decisively toward a grant of sovereign immunity.  311 F. App'x at 873-74 (Batchelder, J., concurring in part and dissenting in part).

9

money judgment awarded to the plaintiff).[6]

Against this backdrop of extensive case law but very little affirmative guidance, this Court and the parties evidently have been left largely to their own devices in determining how a Michigan district court should fare under the four factors of the "arm of the State" inquiry. Beginning with the first and most important factor — namely, the State's potential liability for a judgment against the Defendant Fifteenth District Court, *see Ernst*, 427 F.3d at 359 — Plaintiff maintains that *Pucci* got it right, and that any judgment against the Fifteenth District Court in this case would be paid by the City of Ann Arbor, and not the State of Michigan. In support of this proposition, Plaintiff points to a Michigan statutory provision dictating that the City of Ann Arbor is "responsible for maintaining, financing, and operating" the Fifteenth District Court. Mich. Comp. Laws § 600.8104(2). Plaintiff further cites a number of Michigan court decisions which, in her view, confirm that the Defendant City, and not the State of Michigan, will be responsible for paying any judgment she might obtain against the Fifteenth District Court. *See Cameron, supra,* 579 N.W.2d 859; *Anspach v. City of Livonia,* 140 Mich. App. 403, 364 N.W.2d 336 (1985); *Kain v. State,* 109 Mich. App. 290, 311 N.W.2d 351 (1981).

---

[6]Not only has *Barachkov* seemingly undermined any reliance on Judge Borman's and Judge Lawson's decisions, but the Sixth Circuit also has questioned the continuing vitality of one of its own prior decisions in which it found that an Ohio domestic relations court qualified as an "arm of the State." *See Alkire v. Irving,* 330 F.3d 802, 811-12 (6th Cir. 2003) (questioning "the reasoning . . . , if not the result," of the court's earlier decision in *Mumford v. Basinski,* 105 F.3d 264, 268-70 (6th Cir. 1997)). In *Smith* and *Geller,* Judge Borman recognized that the ruling in *Mumford* had been called into question but nonetheless gave it at least some weight, reasoning that the Michigan and Ohio state courts were similar in many of the respects deemed relevant in *Mumford. See Smith,* 344 F. Supp.2d at 1054-55; *Geller,* 2005 WL 3556247, at *7-*8.

Unfortunately, much of the authority relied upon by Plaintiff here (and by the court in *Pucci*) was discounted by the Sixth Circuit in *Barachkov*.  The plaintiffs in that case, like Plaintiff here, cited the Michigan statutory funding scheme for the state district courts as establishing that the local governmental unit, and not the State of Michigan, would be responsible for paying a judgment against the defendant district court.  The Sixth Circuit viewed this statutory scheme differently, explaining that it established only that the local governmental unit "provides operational financing" for the defendant district court, but that it did not "conclusively state who will ultimately pay for any judgment against this state district court."  *Barachkov,* 311 F. App'x at 867.  Under *Barachkov,* then, a distinction must be drawn between the source of a Michigan district court's operational budget and funding — here, the Defendant City of Ann Arbor — and the source from which a judgment against the district court will be paid, and the statutory scheme cited by Plaintiff simply does not address this latter question.

The court in *Barachkov* also questioned whether the Michigan Supreme Court's decision in *Cameron* truly sheds any light on the first prong of the "arm of the State" inquiry.  As the Sixth Circuit explained:

> Equally unavailing is [the plaintiffs'] reliance on the holding in *Cameron.*  In that case, former employees of a probate court brought suit against the court and its judge alleging civil rights violations.  Pursuant to a mediation agreement, a $25,000 judgment was entered against the probate court, and paid to plaintiffs by the State of Michigan.  The probate court filed a third[-]party[] complaint seeking indemnification from its local funding unit[,] Monroe County.  The Michigan Supreme Court held that "the probate court is not entitled to indemnification from the county here because the underlying claim was resolved at no cost to the probate court."

11

[*Cameron,* 579 N.W.2d] at 862.  In reaching this conclusion, however, the court also stated that "[i]f the probate court had been found liable to plaintiff, the county would be liable for any resulting judgment as a matter of law."  *Id.*  It is presumably upon this statement that [the plaintiffs] rely for the proposition that the State of Michigan is not potentially liable for any judgment in this case.  However, this statement does not establish that the State of Michigan is not potentially liable for any judgments against a district court; on the contrary, as this statement was made in the context of a proceeding for indemnification, it only establishes that when a judgment rendered against a district court has been paid by the State, the county will be responsible for reimbursing the State.  The fact that a county may be called upon to indemnify the State does not resolve the question of whether the State bears any potential legal liability with respect to judgments against district courts . . . .  *Cf.  Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 431, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997) ("[I]t is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant.").

*Barachkov,* 311 F. App'x at 868.  Accordingly, *Cameron* seemingly provides little or no basis for predicting that the State of Michigan will be free from potential liability for any judgment Plaintiff might obtain against the Fifteenth District Court.[7]

The other cases cited by Plaintiff, *Kain* and *Anspach,* provide similarly limited guidance on this question.  In each of these cases, the court followed Michigan Supreme Court precedent in concluding that district court workers are properly viewed as employed by the judicial district, and not by the local governmental unit that pays the operating costs of the district court.  *See Kain,* 311 N.W.2d at 354-55 (citing *Judges of*

---

[7]Indeed, while the court in *Barachkov* noted it only in passing, this Court finds it significant that the plaintiffs in *Cameron* "received $25,000 **from the state of Michigan**" to satisfy the judgment they had obtained against the defendant probate court.  *Cameron,* 579 N.W.2d at 861 (emphasis added).  This surely suggests that the State of Michigan is at least potentially liable for judgments entered against state trial courts, regardless of the availability of legal avenues for the State to seek reimbursement of such payments.

*74th Judicial District v. County of Bay,* 385 Mich. 710, 190 N.W.2d 219, 224 (1971));[8]

*see also Anspach,* 364 N.W.2d at 339.  In so ruling, however, the courts acknowledged

that the local governmental units were responsible for paying the relevant costs associated

with the plaintiff district court employees.  *See Kain,* 311 N.W.2d at 356; *Anspach,* 364

N.W.2d at 339.  Specifically, *Kain* held that the local governmental unit was obligated to

pay workers' compensation benefits arising from the on-the-job death of a district court

bailiff, *see Kain,* 311 N.W.2d at 356, while *Anspach* observed that the local governmental

unit "has a statutory duty to pay the cost of financing the [defendant district court], which

would include any judgment plaintiff might recover against" the district court, *Anspach,*

364 N.W.2d at 339.  In Plaintiff's view, the "common thread that runs through the *Kain,*

*Cameron,* and *Anspach* cases" is that the local funding units for the district courts, and

not the State of Michigan, were deemed responsible for paying judgments or financial

obligations owed by the district courts.  (Plaintiff's 5/22/2009 Response Br. at 9.)

The decisions in *Kain* and *Anspach,* like the Michigan Supreme Court's ruling in

---

[8]The Defendant Fifteenth District Court suggests that *Kain* was overruled by *Judicial Attorneys Association v. State,* 459 Mich. 293, 586 N.W.2d 894 (1998), but this Court cannot agree.  In *Judicial Attorneys Association,* 586 N.W.2d at 899, the Michigan Supreme Court declared unconstitutional a number of Michigan statutory provisions that designated the local funding unit, and not the State, as the employer of Michigan circuit, district, and probate court employees.  Nothing in this ruling is incompatible with the holding in *Kain,* which recognized — consistently with both *Judicial Attorneys Association* and the Michigan Supreme Court's earlier decision in *Judges of 74th Judicial District* — that court workers are employed by the relevant judicial district and not the local funding unit.  Notably, however, the decision in *Judicial Attorneys Association* does tend to undermine the ruling in *Pucci,* 565 F. Supp.2d at 805, which relies in part upon one of the statutory provisions, Mich. Comp. Laws § 600.591(12), that was declared unconstitutional in *Judicial Attorneys Association.*

*Cameron,* stop short of addressing the crucial question here.  These cases stand for the proposition that local governmental units are responsible for financing the operations of their respective district courts, including the obligations they incur under Michigan's workers' compensation scheme (*Kain*) and as a result of judgments entered against them (*Anspach*).  Yet, the Michigan Supreme Court expressly recognized as much in *Cameron,* 579 N.W.2d at 861, observing that Michigan's statutory scheme "dictates that [the relevant local governmental unit] is responsible for all expenses of maintaining, financing, and operating the district court, unless otherwise specified," and explaining that "[b]ecause there is no statutory authority specifying who will pay a judgment entered against [a Michigan trial] court . . . , it must be paid by the local funding unit."  Despite this ruling, the Sixth Circuit held in *Barachkov*, 311 F. App'x at 868, that *Cameron* "does not establish that the State of Michigan is not potentially liable for any judgments against a district court."  If *Cameron* fails to resolve this question of potential liability, this Court cannot see how the Michigan Court of Appeals decisions in *Kain* and *Anspach* could be viewed as doing so.

In short, despite the apparent abundance of statutory provisions and state and federal court rulings that have some arguable bearing upon the first "arm of the State" factor, it is no easy feat to determine whether the State of Michigan faces potential liability for any judgment Plaintiff might obtain against the Fifteenth District Court in this case.  On the one hand, the City of Ann Arbor plainly is obligated to cover the day-to-day costs of maintaining and operating the Fifteenth District Court, and, as a practical matter

14

at least, any judgment obtained by Plaintiff against the court is likely to be paid out of the Fifteenth District Court budget (funded by the City) or other funds furnished by the City. Yet, on the other hand, the City is quite correct in observing that it is the Fifteenth District Court, and not the City, that would be "legally obligated to pay any judgment against it," (Defendant City's Reply Br. at 4), with the City bearing only the more indirect responsibility to provide the funds to satisfy such a judgment.

The Supreme Court has cautioned against "detach[ing] the importance of a State's legal liability for judgments against a state agency from its moorings as an indicator of the relationship between the State and its creation," and thereby "convert[ing] the inquiry into a formalistic question of ultimate financial liability." *Regents of University of California,* 519 U.S. at 430-31, 117 S. Ct. at 904. Rather, the Court has emphasized that "it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it, or to discharge the liability in the first instance, that is relevant" to the Eleventh Amendment inquiry. 519 U.S. at 431, 117 S. Ct. at 904. The Sixth Circuit made a similar point in *Barachkov,* 311 F. App'x at 868, explaining that the Michigan statutory scheme for funding of state district courts by local governmental units and the Michigan court decisions construing this statutory scheme did not "resolve the question of whether the State bears any potential legal liability with respect to judgments against district courts." Under these circumstances, while it can perhaps be said that the first factor in the "arm of the State" inquiry tends to favor Plaintiff and weaken the Fifteenth District Court's appeal to Eleventh Amendment immunity, this factor can hardly be

15

viewed as decisive, because it cannot be said with any degree of confidence that the State of Michigan bears no potential legal liability for any judgment Plaintiff might obtain against the Fifteenth District Court.

Fortunately, the remaining "arm of the State" factors are far less difficult to analyze in this case. The second factor asks "how state law defines the entity." *Ernst,* 427 F.3d at 359. A Michigan statute establishes a single "district court . . . in the state," "divided into judicial districts" but "subject to the superintending control of the supreme court." Mich. Comp. Laws § 600.8101(1). In accordance with this statutory scheme, the Michigan Supreme Court has emphasized on more than one occasion that the district courts are part of the State's "one court of justice," and that "[t]he judiciary is an independent department of the State." *Judicial Attorneys Association,* 586 N.W.2d at 897 (internal quotation marks and citations omitted); *see also Judges of 74th Judicial District,* 190 N.W.2d at 224 (explaining that "Michigan has but one district court," which "in turn is a subdivision of Michigan's one court of justice"). Accordingly, as the federal courts have recognized, and as Plaintiff essentially concedes, this factor strongly supports the conclusion that the Fifteenth District Court is entitled to Eleventh Amendment immunity. *See Smith,* 344 F. Supp.2d at 1055; *Geller,* 2005 WL 3556247, at *7-*8; *see also Mumford,* 105 F.3d at 268-69 (relying heavily on this consideration to hold that an Ohio common pleas court was an arm of the State despite its local governmental source of funding); *Benn v. First Judicial District of Pennsylvania,* 426 F.3d 233, 240 (3d Cir. 2005) (reaching the same conclusion as to Pennsylvania's locally funded court system).

16

Next, the Court must consider "what degree of control the state maintains over" the Fifteenth District Court. *Ernst,* 427 F.3d at 359. Again, this factor favors a grant of Eleventh Amendment immunity to the Fifteenth District Court, and Plaintiff recognizes as much. In *Judicial Attorneys Association,* 586 N.W.2d at 897, the Michigan Supreme Court acknowledged that the state's trial courts "are dependent on over 150 separate local governmental units for the bulk of the operational funding for their courts," but nonetheless "strongly affirm[ed] that the fundamental and ultimate responsibility for all aspects of court administration, including operations and personnel matters within the trial courts, resides within the inherent authority of the judicial branch." Indeed, in declaring unconstitutional various statutory provisions that would have designated trial court workers as employees of the local funding units, the court in *Judicial Attorneys Association* reasoned that these provisions "impermissibly interfere[] with the judiciary's inherent authority to manage its internal operations." 586 N.W.2d at 898. Because Michigan law dictates that "[t]he judicial branch is constitutionally accountable for the operation of the courts and for those who provide court services," 586 N.W.2d at 899, and because Michigan's "one court of justice" plainly qualifies as an "arm of the State," it follows that the State of Michigan maintains a substantial degree of control over its district courts.

The fourth and final factor in the Sixth Circuit's "arm of the State" analysis is "the source of the entity's funding." *Ernst,* 427 F.3d at 359. Just as the second and third factors plainly support the Fifteenth District Court's claim of Eleventh Amendment

17

immunity, this factor indisputably cuts the other way.  As explained earlier, Michigan law dictates that the City of Ann Arbor is "responsible for maintaining, financing, and operating" the Fifteenth District Court, Mich. Comp. Laws § 600.8104(2), and the City acknowledges that it is "the source of operational funds for" the Defendant district court, (Defendant City's 6/22/2009 Reply Br. at 5).  Thus, as the City recognizes, this factor "indicates against immunity."  (*Id.*)

Beyond these four factors identified in the Sixth Circuit's "arm of the State" decisions, the Supreme Court has considered "whether the entity's functions fall within the traditional purview of state or local government."  *Ernst,* 427 F.3d at 359 (citing *Hess,* 513 U.S. at 45, 115 S. Ct. at 403).  As discussed above, Michigan law establishes a single district court divided into judicial districts that span the entire state, and these courts, in turn, are deemed part of a single court of justice that is recognized as an "independent department of the State."  *Judicial Attorneys Association,* 586 N.W.2d at 897 (internal quotation marks and citations omitted).  Consequently, the Fifteenth District Court is properly viewed as an integral part of "the 'adjudicative voice' of the state itself," where the Michigan court system "is mandated by the state constitution to be uniform and to be supervised by one supreme court."  *S.J. v. Hamilton County, Ohio,* 374 F.3d 416, 421-22 (addressing the similarly organized Ohio court system).  This factor, then, favors a grant of immunity.

Having reviewed all of the relevant considerations, it remains only to determine how much weight to give each of these factors in the overall "arm of the State" analysis.

18

As noted, the first of these factors — "whether any judgment must be satisfied out of the state treasury" — has been deemed "the most important consideration in resolving an Eleventh Amendment immunity issue." *Hess,* 513 U.S. at 51, 115 S. Ct. at 406.  Yet, "[i]mportant as the monetary liability factor may be, it is not the only factor." *Ernst,* 427 F.3d at 365.  Where, as here, this factor is inconclusive and a State's potential legal liability for a judgment is uncertain, the courts have suggested that it is appropriate to give greater weight to the so-called "dignity" factors — *i.e.,* those that rest upon a recognition of the importance of respecting each State's separate sovereignty.  *See, e.g., Hess,* 513 U.S. at 39, 47, 115 S. Ct. at 400, 404 (observing that "current Eleventh Amendment jurisprudence emphasizes the integrity retained by each State in our federal system," and explaining that "[w]hen indicators of immunity point in different directions, the Eleventh Amendment's twin reasons for being remain our prime guide"); *S.J.,* 374 F.3d at 421 (emphasizing that "values beyond guarding the public fisc play a role in the arm-of-the-state inquiry"); *Smith,* 344 F. Supp.2d at 1055.

In suits against state courts, even those that are locally funded, this balance has almost invariably been struck in favor of Eleventh Amendment immunity.  In *S.J.,* 374 F.3d at 421, for example, the Sixth Circuit stated that "[t]o the extent that considerations of dignity are relevant in determining whether an entity is protected by state sovereign immunity, one would expect this factor to weigh heavily in a suit against a state court." Similarly, in reversing Judge Borman's decision in *Englar* and remanding for further proceedings, the Sixth Circuit explained that "[c]onsiderations of dignity are particularly

19

relevant in a suit against a state court, which is the 'adjudicative voice' of the State itself." *Barachkov,* 311 F. App'x at 868. Beyond these statements by the Sixth Circuit, there is the brute fact that, with the exception of Judge Lawson's decision in *Pucci,* the courts in every case identified by the parties have held that state trial courts were entitled to Eleventh Amendment immunity. *See, e.g., Mumford,* 105 F.3d at 268-69; *Benn,* 426 F.3d at 240; *Kelly v. Municipal Courts of Marion County, Indiana,* 97 F.3d 902, 907-08 (7th Cir. 1996); *Franceschi v. Schwartz,* 57 F.3d 828, 831 (9th Cir. 1995); *Smith,* 344 F. Supp.2d at 1054-55; *Geller,* 2005 WL 3556247, at *7-*8.

Upon considering and weighing the various "arm of the State" factors against the backdrop of this nearly uniform case law, the Court concludes that the Fifteenth District Court is protected by Eleventh Amendment immunity against the present federal court suit. The "dignity" factors weigh heavily in favor of immunity, where Michigan law expressly defines the State's district courts as part of a state-wide, unified judiciary, the State exercises extensive control over these courts, and the functions performed by the district courts are part and parcel of the role assigned to the State's independent judicial branch under the Michigan Constitution. Under these circumstances, a federal court suit against a Michigan district court can truly be said to impinge upon the independent sovereignty enjoyed by the State of Michigan. While the local funding of the Michigan district courts somewhat weakens their appeal to Eleventh Amendment immunity and diminishes the prospect that a judgment against a state district court will be collected from the State treasury, the Court concludes that this alone "does not transform [the state

20

district courts] into local entities for Eleventh Amendment purposes." *Benn,* 426 F.3d at

240. Rather, despite this local funding, the Court finds that the Defendant Fifteenth

District Court remains an "arm of the State," and that Eleventh Amendment immunity

therefore bars Plaintiff from pursuing her FMLA claim against Defendants in federal

district court.[9]

## IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that the Defendant Fifteenth

District Court's May 1, 2009 motion for judgment on the pleadings (docket #17) is

GRANTED.  IT IS FURTHER ORDERED that the Defendant City of Ann Arbor's May

20, 2009 motion for summary judgment (docket #23) is GRANTED to the extent that it

---

[9]It is true, of course, that even though an entity might be entitled to Eleventh Amendment immunity as an "arm of the State," Congress nonetheless may "abrogate such immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nevada Department of Human Resources v. Hibbs,* 538 U.S. 721, 726, 123 S. Ct. 1972, 1976 (2003).  Yet, the Sixth Circuit has held that the congressional abrogation of sovereign immunity as to other sorts of claims brought under the FMLA does not extend to claims brought under the Act's "self-care" provision, 29 U.S.C. § 2612(a)(1)(D).  *See Touvell v. Ohio Department of Mental Retardation & Developmental Disabilities,* 422 F.3d 392, 405 (6th Cir. 2005).  Since Plaintiff is pursuing only a "self-care" claim in this case, she concedes that Eleventh Amendment immunity, if available to the Fifteenth District Court, would extend to the FMLA claim asserted in her complaint.  (*See* Plaintiff's 5/22/2009 Response Br. at 11-12.)

21

argues that the Fifteenth District Court is entitled to sovereign immunity, and is otherwise

DENIED AS MOOT.


                              s/Gerald E. Rosen
                              Chief Judge, United States District Court

Dated:  October 30, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record
on October 30, 2009, by electronic and/or ordinary mail.

                              s/Ruth Brissaud
                              Case Manager